IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                            CRIMINAL ACTION NO. 3:07-00188

TAARON BOWMAN

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Taaron Bowman's Motion to Suppress the evidence obtained as a result of a vehicle search. For the following reasons, the Court **DENIES** the motion.

**I.
FACTS**

On July 31, 2007, Huntington Police Detectives Paul Hunter and Paul Minigh were conducting surveillance in an unmarked car at the Cookie Carnival located in Huntington. The subject of the surveillance was a white van. While watching the white van, the officers noticed a maroon truck with an older white male in the front seat. The officers also observed movement in the back seat and saw a female move from the back seat to the front seat of the truck. The officers recognized the female as Debra Bowen, whom they knew to be a prostitute and drug user.

Officer Hunter testified that Ms. Bowen appeared to recognize the unmarked car. Thereafter, the maroon truck left the parking lot with Ms. Bowen as a passenger. The officers attempted to follow the truck, but lost sight of it, so they returned to the parking lot of the Cookie Carnival. Upon their return, the officers noticed the maroon truck was again in the area and

occupied by the older white male. The officers also noticed that Ms. Bowen was now a passenger in a black SUV sitting a short distance away on the same lot. As Officer Hunter drove his unmarked car behind the SUV, the SUV pulled away and turned down an alley. The officers followed the SUV, which traveled approximately fifty yards and then pulled off quickly to the side of the road. The officers did nothing to initiate the stop of the SUV. Officer Hunter pulled his car behind the SUV. Both officers then got out of their car, approached the SUV, and announced they were police officers. Officer Minigh went to the driver's side, while Officer Hunter went to the passenger side. Both officers testified that at this point the occupants of the SUV were not free to leave.

Officer Hunter asked Ms. Bowen to step out of the vehicle and began questioning her about her activity and whether there was anything in the vehicle. Ms. Bowen admitted having a crack stem in her purse. In the meantime, Officer Minigh went to the driver, Defendant, whom he did not know. While Officer Hunter was talking to Ms. Bowen, he recognized Defendant from a previous arrest involving crack cocaine and firearms. According to the testimony of the Officer Hunter, he did not recognize Defendant until after he had begun questioning Ms. Bowen. Officer Hunter told Officer Minigh to have Defendant step out of the SUV, and Defendant did so. Officer Minigh then searched Defendant for weapons, but he did not find any. Officer Minigh further stated Defendant appeared agitated that he had been stopped. Officer Hunter then asked Defendant if it was okay for him to search the vehicle. Both officers believed that Defendant gave consent, although defense counsel argues that Defendant's response, as stated by Officer Minigh, was not consent. When Officer Hunter searched the SUV, he found crack cocaine in the center console.

## II.
## DISCUSSION

Defendant first claims the officers lacked reasonable suspicion to detain him. Citing *Brendlin v. California*, 127 S. Ct. 2400 (2007), Defendant asserts that the subsequent identification of him as a known drug dealer and his alleged consent to search were fruits of an illegal detention. Second, Defendant complains that his response to the officers when they asked for consent to search the SUV was actually a refusal to consent.

In *United States v. Arvizu*, 534 U.S. 266 (2002), the United States Supreme Court reaffirms the standard for determining reasonable suspicion: whether, considering the totality of the circumstances, the detaining officer has a particularized and objective basis for suspecting criminal activity. *Id.* at 273-74. A court must accord due weight to all the factual inferences drawn by the officers in light of their experience and training and based upon the cumulative information available to them at the time. *Id.* As *Arvizu* makes plain, a series of acts taken together may create a reasonable suspicion, even though each act could be innocently explained or insufficient standing alone. *Id.* at 274.

Here, the Court finds the series of acts observed by the officers, when considered together, supported a reasonable suspicion. First, the officers saw Ms. Bowen, known to them to be a drug user and prostitute, move from the back to the front seat of the maroon truck as it sat on the parking lot. She appeared to cover her face as she looked toward the officers' unmarked car. The truck left but apparently returned a short time later. Upon the officers' return, they observed Ms. Bowen in the SUV, which was parked some distance away from the truck, while the truck's

driver remained in the truck. Then, as the officers pulled into the lot and behind the SUV, it pulled away with Ms. Bowen and proceeded down an alley. The officers followed and, after traveling only fifty yards, the SUV suddenly pulled over to the side of the street and stopped. The officers did not stop the SUV; rather, Defendant of his own volition stopped the SUV, quickly and on the side of the alley a short distance from where it had been parked when the officers first saw it. This combination of actions gave the officers reasonable suspicion to approach the SUV to question the occupants, particularly Ms. Bowen. The detention of the SUV and its occupants did not begin until after it stopped, but the fact that it stopped as it did combines with the suspicious behavior already observed by the officers. The cumulative weight of this series of actions supports the officers' determination of reasonable suspicion that further investigation was warranted even though each act might be innocent in itself.

As to the issue of whether Defendant gave consent for the search of the SUV, the officers' testimony is unrebutted that Officer Hunter asked for and received consent. Officer Minigh testified that Officer Hunter asked Mr. Bowman something to the effect of "[d]o you mind if I search your car?" Officer Minigh stated that Defendant said "yes," but in the sense that it was okay to conduct the search. Officer Minigh's testimony that Defendant said "yes" was not offered literally, but it was just Officer Minigh paraphrasing in common parlance. The testimony of both officers is clear that they both understood Defendant consented to the search. Given the entirety of the officers' testimony, the Court finds no reason to find Defendant's response was ambiguous or misunderstood, especially given the fact Defendant did not object or speak up to contradict the

officers' understanding that he consented when Officer Hunter began his search. Therefore, the Court finds no merit to Defendant's argument he did not actually consent to the search.

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court finds that the officers had a reasonable suspicion to investigate and detain Defendant, and Defendant gave consent for the officers to search his vehicle. Accordingly, the Court **DENIES** Defendant's motion to suppress.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals' Service.

ENTER: January 14, 2008

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE